J-S42007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MATTHEW BRYCE PARKINSON | : | No. 516 MDA 2025 |

Appeal from the Order Entered March 21, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001506-2024

BEFORE: OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY OLSON, J.:                    **FILED: APRIL 28, 2026**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered on March 21, 2025, which granted a petition for writ of *habeas corpus* filed by Matthew Bryce Parkinson (Parkinson) and dismissed criminal charges against him for one count of stalking and two counts of harassment.[1] After careful consideration, we vacate the order and remand for trial.

The trial court briefly summarized the facts and procedural history of this case as follows. The Commonwealth filed the aforementioned criminal charges against Parkinson on October 30, 2024. On December 18, 2024, the trial court held a preliminary hearing. Therein, "Cooper Burgess [(Burgess)],

_____

[1] 18 Pa.C.S.A. §§ 2709.1(a)(1)(stalking), 2709(a)(2) (harassment), and 2709(a)(7) (harassment). The Commonwealth also charged Parkinson with harassment pursuant to 18 Pa.C.S.A. § 2709(a)(6) but following a preliminary hearing, that charge was not held over for court. The Commonwealth has not appealed that determination.

the alleged victim in this matter, testified that she and her husband moved to Pennsylvania in the early 2010s and met [Parkinson] and his wife when they kept running into each other outside of church [and] began a friendship between the two couples that lasted nearly 10 years." Trial Court Opinion, 3/21/20255, at *2 (unpaginated) (record citations omitted). Burgess testified that the relationship began to sour in 2015 when Parkinson began visiting Burgess unannounced at her job at the Bicycle Shop in State College, Pennsylvania. *Id.* As a result, the couples stopped taking trips together. *Id.* at *3. In 2022, Burgess accepted an invitation to take a walk with Parkinson during her lunch break. Afterward, the unannounced visits increased, and Burgess asked co-workers to attend lunches with her and took steps to avoid Parkinson. *Id.* at *3-4. In September 2022, Burgess's husband told Parkinson she did not want to speak with Parkinson anymore. *Id.* at *4. Thereafter, the trial court noted:

> After being informed in September 2022 that he should not communicate with Burgess anymore, [Parkinson] sent Burgess an email containing a job opportunity at Penn State [University] that he thought she might be interested in. On another occasion, [Parkinson] approached Burgess's car in the church parking lot, but turned away when Burgess shook her head. Thereafter, [Parkinson] sent an e-mail saying he wanted to figure out what was going on between them.
>
> The last communication that Burgess received from [Parkinson] was sent in March 2023, wherein [Parkinson] stated that he thought enough time had passed and that [he] and Burgess should talk. Between September 2022 and March 2023, [Parkinson text] messaged [a] group chat [thread] between the two couples with a picture of a campfire and the message "miss you guys." [Parkinson] would also communicate through

- 2 -

> Burgess's husband often, after being told that Burgess did not want to speak with [Parkinson]. The two couples last got together socially in 2022.
>
> [Parkinson] holds a management position at the church that Burgess and her husband attend. Burgess testified that she reported [Parkinson's] behavior to church leadership in the [s]ummer of 2023. Burgess testified that church leadership told [Parkinson] not to talk to Burgess or her children. After March 2023, Burgess began to hear from her children that they would see [Parkinson] at their places of work. At an unspecified date in 2024, [Parkinson] approached Burgess's teenage daughter at church camp, where [Parkinson] was teaching a class. This interaction is what caused Burgess to go to the police. Burgess described this situation as isolating, causing her to be nervous and on the lookout for [Parkinson]. Burgess had no contact with [Parkinson] by text, email, or in person during 2024 except for being in close proximity to [Parkinson] at the church they both attend.

*Id.* at *4-5 (record citations omitted).

As mentioned, following the preliminary hearing, the magisterial district court dismissed one count of harassment pursuant to 18 Pa.C.S.A. § 2709(a)(6), but held that "the Commonwealth established a *prima facie* case" on the remaining charges. N.T., 12/18/2024, at 92. On January 8, 2025, Parkinson filed a petition for writ of *habeas corpus*, seeking to have the remaining charges dismissed because the Commonwealth allegedly failed to produce *prima facie* evidence "for each and every element of the offenses as charged" and that "[s]ome or all of the charges against Parkinson [were] barred by the statute of limitations." *See* Petition for Writ of Habeas Corpus, 1/8/2025, at ¶¶ 6-7. On the same date, Parkinson also filed a request for a bill of particulars, claiming that the Commonwealth's criminal complaint contained "numerous vague allegations of acts and dates" spanning from

2015-2023 and "request[ing] that the Commonwealth state with specificity and particularity the date, time, and place of each and every act of" Parkinson that constituted an alleged crime under 18 Pa.C.S.A. §§ 2709.1 (stalking), 2709(a)(2) (harassment), and 2709(a)(7) (harassment). *See* Request for Bill of Particulars, 1/8/2025, at ¶¶ 1-5. The trial court held an *omnibus* pretrial hearing on February 5, 2025. At its conclusion, the trial court ordered the Commonwealth to file a bill of particulars within 14 days.[2] N.T., 2/5/2025, at 8; *see also* Trial Court Order, 2/11/2025. The trial court further directed the parties to "submit briefs for the [court's] consideration in support of their respective positions on [Parkinson's] petition for writ of *habeas corpus*" and stated that it would review the briefs and the transcripts from the preliminary hearing, as made part of the certified record, before ultimately rendering a decision. *Id.* at 12; *see also* Trial Court Order, 2/11/2025. Both parties subsequently filed timely briefs and responses.

_____

[2] Instead, the Commonwealth filed a "response" to Parkinson's request for a bill of particulars averring, *inter alia*, that "the information requested [was] included with discovery, more specifically, within the police report and statements given by the complainant." Commonwealth's Response to Request for Bill of Particulars, 2/19/2025, at ¶¶ 2-5. Parkinson countered by filing a motion to dismiss the criminal information on February 24, 2025. Therein, he argued the Commonwealth failed to object or comply with the trial court's direct order to produce a bill of particulars within 14 days, that such tactics were dilatory and "subjected Parkinson to public humiliation and impacted Parkinson's employment," and that "[t]he Commonwealth's response [was] entirely inadequate to enable Parkinson to prepare defenses, avoid surprise, or intelligently raise pleas of double jeopardy or the [statute] of limitations." Parkinson's Motion to Dismiss, 2/24/2025, at ¶¶ 3-10. On March 5, 2025, the trial court entered an order scheduling a hearing on Parkinson's motion to dismiss.

On March 21, 2025, the trial court filed an order and accompanying opinion dismissing the remaining charges against Parkinson because the conduct at issue was "beyond the relevant statute of limitations." Trial Court Order, 3/21/2025. More specifically, the trial court determined that the Commonwealth filed the criminal complaint against Parkinson on October 30, 2024 and that the statute of limitations for both stalking and harassment provide that prosecution for those offenses must be commenced within two years after commission. *Id.* at *6, *citing* 42 Pa.C.S.A. § 5552(a). The trial court further noted that Section 5552(d) provides that "[a]n offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the complicity of the defendant therein is terminated. Time starts to run on the day after the offense is committed." Trial Court Opinion, 2/11/25, at *6, *citing* 42 Pa.C.S.A. § 5552(d). As such, the trial court determined that the statute of limitations barred "prosecution of conduct that occurred prior to October 29, 2022" unless the Commonwealth "show[ed] that the charge[s] relate[d] to a statute that [was] clearly intended to prohibit a continuing course of conduct." Trial Court Opinion, 2/11/25, at *7.

With regard to stalking under Section 2709.1(a)(1), the trial court first noted that Parkinson was "not charged with stalking under [Section] 2709.1(a)(2), also known as the communication provision." Trial Court Opinion, 2/11/25, at *7. Moreover, the trial court determined that "Burgess concede[d] that her last physical interaction with [Parkinson] was in

September of 2022." Trial Court Opinion, 2/11/25, at *8. The trial court also found that "[a]though Burgess [] identified a number of instances in which [Parkinson] 'followed' her, … that conduct took place between 2015 and September 2022" but that "[a]fter September, the next (and final) communication Burgess received from [Parkinson] was an e-mail in March 2023" which was not an act that continued a course of "following" as contemplated by the statute.[3] *Id.* at *8. Further, the trial court concluded

_____

[3] In its subsequent Rule 1925(a) opinion filed on July 2, 2025, the trial court expounded on its analysis of stalking in response to the Commonwealth's contention that the court erroneously "misapplied the language of the stalking statute … as only applying to the conduct of 'following a person'" and did not consider "text messaging, emailing, and contacting [Burgess's] family in its analysis." Rule 1925(a) Opinion, 7/2/2025, at *1 (unpaginated), *citing* Commonwealth's Rule 1925(b) Statement. The trial court "concede[d] that the actions of text messaging, emailing and contacting family could qualify as acts under the stalking statute." *Id.* However, the trial court continued:

> [T]he intended gist of [the trial c]ourt's analysis was that there was a 'course of conduct' as contemplated by [statute], that occurred from 2015 to September 2022 and ended after the complainant's husband told [Parkinson] to stop speaking with her. Thereafter, there were three limited communications from [Parkinson] to the complainant which [the trial c]ourt determined did not logically continue the prior course of conduct such that they should restart the statutory period. Specifically, after being told not to speak with the complainant, [Parkinson] sent [Burgess] an email containing a job opportunity at Penn State, [Parkinson] sent a text message that said "miss you guys" to a group chat that [included Parkinson], his wife, [Burgess] and her husband, and [Parkinson was] alleged to have approached [Burgess's] car at church, but turned away after [she] shook her head. Considering this conduct in the context of a 10-year friendship between the two couples that began at the same church and only recently soured, the [trial c]ourt did not find the three

*(Footnote Continued Next Page)*

- 6 -

that Parkinson's approach of Burgess's daughter was not a continuing course of stalking conduct against Burgess, the alleged victim in this matter. ***Id.***

With regard to the two counts of harassment under Sections 2709(a)(2) and 2709(a)(7), respectively, the trial court determined that the Commonwealth failed to provide evidence that Parkinson violated the harassment statute within the two-year statutory period. ***Id.*** In particular, with respect to Section 2709(a)(2), the trial court again noted that there was no evidence that Parkinson "followed Burgess in or about a public place or places at any time" after the statute of limitations expired on "October 29, 2022." ***Id.*** at *9, n. 2. The trial court ultimately found that Parkinson's approach of Burgess's daughter in 2024 and "an email seeking to make-up" in March 2023 did not constitute "following" under Section 2709(a)(2). ***Id.*** at *9. With regard to harassment pursuant to Section 2709(a)(7), the trial court determined that there was no evidence of repeated communications or messages without the intent of legitimate communication. ***Id.*** at *10. The trial court identified two messages Parkinson sent during the two-year statutory period: (1) a "group chat between the two couples with a picture of a campfire and the message 'miss you guys'" and, (2) "an email seeking to make up" and to talk further. ***Id.*** However, the trial court also noted that Parkinson "ceased all communication" thereafter when Burgess's husband

---

communications that occurred after September 2022 to be indicative of a continuing course of conduct.

***Id.*** at *1-2 (record citations omitted).

- 7 -

confronted him. *Id.* Accordingly, the trial court concluded that "neither of [these] two messages sent after October 29, 2022 were sent with the intent to harass" and "[i]n both cases, [Parkinson] sent a message that attempted to mend a broken relationship between the parties" but then Parkinson "ceased all communications" thereafter. *Id.* at *10-11. Hence, on March 21, 2025, by order and opinion, the trial court granted Parkinson's petition for *habeas corpus* and dismissed the three charges against him "as beyond the relevant statute of limitations." *Id.* at *11. This timely appeal resulted.[4]

On appeal, the Commonwealth presents the following issues for our review:

I.      Whether the [c]ourt erred in its analysis for the count of stalking when it limited conduct to "following the person without proper authority" and failed to consider other actions such as messages or contacting immediate family of the victim in its analysis?

II.     Whether the [c]ourt erred when it found that conduct prior to October 29, 2022, was outside the statute of limitations for the [c]ount of [s]talking and failed to consider a continued course of conduct between October 2022 and March 2023, thus extending the statute of limitation?

III.    Whether the [c]ourt erred when it failed to consider any conduct prior to October 2022 when evaluating whether the

_____

[4] The Commonwealth filed a timely notice of appeal on April 17, 2025. On May 19, 2025, the trial court directed the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied timely. On July 2, 2025, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) which largely relied upon its earlier decision filed on March 21, 2025.

Commonwealth met its *prima facie* burden regarding the count of harassment pursuant to 18 Pa.C.S.A. § 2709(a)(7)?

Commonwealth's Brief at 4.

All of the Commonwealth's issues are inter-related and we will examine them together. First, the Commonwealth argues that the trial court erred by narrowly reading the stalking statute, 42 Pa.C.S.A. § 2709.1 "to be conduct that is solely 'following' in the sense of actual physical presence" and to exclude communications forwarded electronically. *Id.* at 11. The Commonwealth suggests that "an email sent in March of 2023 and contact with [Burgess's] children at church functions or work" qualify as "conduct [contemplated] under 18 Pa.C.S.A. § 2709.1(a)(1)" to support *prima facie* evidence of stalking.[5] *Id.* at 13. Next, the Commonwealth asserts that although Parkinson "ceased physical contact in September 2022, [...he sent an e-mail to [Burgess] five months after, in March 2023, asking to speak" and approached Burgess's minor child at "a church function in June 2024." *Id.* at 15-16. The Commonwealth suggests that these additional acts extended Parkinson's course of conduct such that his acts which occurred before October

_____

[5] More specifically, the Commonwealth posits that "[t]he e-mail that was sent in March of 2023 specifically references [Parkinson's] desire to talk to [Burgess], which [wa]s not dissimilar to his behavior" in 2022. Commonwealth's Brief at 13. Furthermore, the Commonwealth concedes that there is no caselaw supporting its theory that "contact [with] immediate family [is] conduct as contemplated under [Section] 2709.1" but argues that "given what had happened before, contact with [Burgess's] children which began in 2023-2024 should be considered." *Id.* The Commonwealth asserts that "[w]hen access to [Burgess] became limited, [Parkinson] showed up at the workplace of her children or interacted with them when she wasn't present, which caused her distress based upon their history." *Id.*

29, 2022 should be considered in the assessment of whether a *prima facie* case had been established. *Id.* at 15. Third, with regard to harassment under 18 Pa.C.S.A. § 2709(a)(7), the Commonwealth "doesn't necessarily disagree [with the trial court] that when taken on its own, the communication from March 2023 does not amount to a violation under [Section] 2709(a)(7), but when viewed in the context of the history of [Burgess] and [Parkinson], it does constitute a violation." *Id.* at 17. In particular, the Commonwealth contends that the trial court "should have viewed the March 2023 message in the context of the conduct that occurred prior to October 2022 rather than isolating the message alone so that it may seem innocuous to anyone but" Burgess. *Id.* at 18.

Our Supreme Court has previously determined:

[T]he question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law. [The appellate] standard of review over such questions is *de novo* and our scope of review is plenary.

\* \* \*

Pennsylvania law provides:

The basic principles of law with respect to the purpose of a preliminary hearing are well established. The preliminary hearing is not a trial. The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention. At this hearing the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it.

A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the

accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury. A judge at a preliminary hearing is not required, nor is he authorized to determine the guilt or innocence of an accused; his sole function is to determine whether probable cause exists to require an accused to stand trial on the charges contained in the complaint. An offense on which the Commonwealth has met its burden will be held over for trial; at the trial, of course, the Commonwealth's burden is to establish guilt beyond a reasonable doubt. The weight and credibility of the evidence are not factors at the preliminary hearing stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense.

Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case. The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established. The more-likely-than-not test, must be applied to assess the reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability. The more-likely-than-not test is the minimum standard — anything less rises no higher than suspicion or conjecture.

***Commonwealth v. Perez***, 249 A.3d 1092, 1102–1103 (Pa. 2021) (internal citations, quotations, and ellipsis omitted); ***see also*** Pa.R.Crim.P. 542(D) ("At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it."). "To make this determination, the trial court should accept into evidence the record from the preliminary hearing as well as any additional evidence which the Commonwealth may have available to further prove its *prima facie case*"

- 11 -

which may be presented at a subsequent proceeding. ***Commonwealth v. Morman***, 541 A.2d 356, 360 (Pa. Super. 1988).

Here, the Commonwealth charged Parkinson with the following crimes:

**§ 2709.1. Stalking**

(a) Offense defined.--A person commits the crime of stalking when the person either:

(1) **engages in a course of conduct or repeatedly commits acts toward another person**, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person[.]

18 Pa.C.S.A. § 2709.1(a)(1) (emphasis added).

**§ 2709. Harassment**

(a) Offense defined.--A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

\* \* \*

(2) follows the other person in or about a public place or places;

\* \* \*

(7) **communicates repeatedly** in a manner other than specified in paragraphs (4), (5) and (6).[6]

_____

[6] Paragraphs four through six refer to lewd, lascivious, threatening or obscene words, language, drawings or caricatures, anonymous communications, and communications at extremely inconvenient hours, respectively. "[A] person may be convicted of harassment under subsection (a)(7) if, with the intent to harass, annoy or alarm another person, []**he communicates a message repeatedly without the intent of a legitimate communication**." *(Footnote Continued Next Page)*

18 Pa.C.S.A. § 2709(a)(2) and (7).[7]

In this case, there is no dispute that the Commonwealth was required to commence prosecution for both stalking and harassment within two years after the crimes were committed. *See* Trial Court Opinion, 3/21/2025, at *6, *citing* 42 Pa.C.S.A. § 5552(a) ("[A] prosecution for an offense must be commenced within two years after it is committed."). "[A] prosecution is commenced either when an indictment is found or an information … is issued, or when a warrant, summons or citation is issued, if such warrant, summons or citation is executed without unreasonable delay." *Id.* at *6-7, *citing* 42 Pa.C.S.A. § 5552(e). "An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the complicity of the defendant therein is terminated. Time starts to run on the day after the offense is committed." *Id.*, *citing* 42 Pa.C.S.A. § 5552(d).

This Court has recently reiterated:

> Our Crimes Code defines stalking as, *inter alia*, engaging "in a course of conduct or repeatedly commit[ting] acts toward another person, ... under circumstances which demonstrate either an intent to place [the] other person in reasonable fear of bodily injury or to cause substantial emotional distress." 18 Pa.C.S.A. § 2709.1.

_____

***Commonwealth v. Papp***, 305 A.3d 62, 71 (Pa. Super. 2023) (emphasis added).

[7] Because the Commonwealth does not challenge the trial court's dismissal of the count of harassment pursuant to Section 2709(a)(2), we need not address it further.

"For purposes of the stalking statute, course of conduct is a '**pattern of actions** composed of more than one act over a period of time, however short, **evidencing a continuity of conduct**.'" **Commonwealth v. Leach**, 729 A.2d 608, 611 (Pa Super. 1999) (citation omitted). A "course of conduct by its very nature requires a showing of a repetitive pattern of behavior," which the Commonwealth establishes by proving at least two related but separate events. **Id.** at 611.

Harassment [also] requires **a course of conduct or repeated acts**, "with intent to harass, annoy or alarm another," **serving no legitimate purpose**. 18 Pa.C.S.A. § 2709(a)(3).

The harassment statute defines a "course of conduct" as a "**pattern of actions** composed of more than one act over a period of time, however short, **evidencing a continuity of conduct**." 18 Pa.C.S.A. § 2709(f). While a single act does not meet the definition of a course of conduct, "more than one act over a short period of time" can satisfy this requirement. **Commonwealth v. Coniker**, 290 A.3d 725, 734 (Pa. Super. 2023) (citation omitted)

**Commonwealth v. Cruz**, 348 A.3d 1199, 1213 (Pa. Super. 2025) (emphasis added). Here, there is no dispute that a legislative purpose to prohibit a continuing course of conduct applies to both stalking and harassment.

Our Court has stated:

Course of conduct is established by proof of two related but separate events. For purposes of the stalking statute, course of conduct is a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct.

The elements of stalking are not established until the occurrence of a second prohibited act and any additional acts extend the course of conduct. These additional acts, in conjunction with the prior acts, also create a new "course of conduct" and are, by definition, stalkings.

\* \* \*

[S]talking, as defined by the legislature, occurs with each act involved in an established course of conduct, and forms the basis

- 14 -

for an independent charge. Each stalking, including the first, is a certifiable count, capable of sustaining a separate conviction and sentence. **Each act, constituting the course of conduct leading to arrest and trial, is not merely cumulative evidence of stalking but a stalking in and of itself**.

\* \* \*

This course of conduct can be analogized to repetitive drug sales, which are a course of conduct which frequently results in a single prosecution on multiple charges, each sale being a count in the complaint. A conviction and sentence may be imposed as to each count as each sale constitutes a violation of the law and an attack on the well-being of society and the victimization of the purchaser.

*Leach*, 729 A.2d at 611–612 (emphasis added).

In this case, the trial and parties agree that "[t]he record supports that [Parkinson] was told by Burgess's husband to stop speaking [to her] in September 2022." Trial Court Opinion, 3/21/2025, at *9; *see also* Trial Court Opinion, 7/2/2025, at *2 ("[In] September 2022 … the complainant's husband told [Parkinson] to stop speaking to her."). The trial court then identified five separate actions taken by Parkinson, as testified to by Burgess at the preliminary hearing, that occurred within the relevant, two-year statute of limitations period, or between October 2022 and October 2024. More specifically, the trial court stated that "after being told not to speak with [Burgess], [Parkinson] sent [her] an email containing a job opportunity at Penn State, [Parkinson] sent a text message that said 'miss you guys' to a [cellular telephone] group chat [between Parkinson,] his wife, [Burgess] and her husband, and [Parkinson] is alleged to have approached [Burgess's] car at church, but turned away after [Burgess] shook her head at him." Trial Court Opinion, 7/2/2025, at *2. Furthermore, "on March 18, 2023,

- 15 -

[Parkinson] sent Burgess an email seeking to make up and 'hoping that enough time ha[d] passed that maybe [they] could talk.'" Trial Court Opinion, 3/21/2025, at *10. Finally, "[a]t an unspecified date in 2024, [Parkinson] approached Burgess's teenage daughter at church camp, where [Parkinson] was teaching a class" despite "church leadership [telling Parkinson] not to talk to Burgess or her children." *Id.* at *5.

Ultimately, the trial court examined these five acts by Parkinson and determined, as a matter of law, that the evidence introduced by the Commonwealth at the preliminary hearing did not establish a *prima facie* case for stalking or harassment. More specifically, the trial court deemed all five actions within the limitations period to be innocuous and insufficient to establish *prima facie* evidence of Parkinson's intent to cause emotional distress in Burgess. *See id.* at *10 ("Considering this conduct in the context of a 10-year friendship between these two couples that began at the same church and only recently soured, the [c]ourt did not find the [] communications that occurred after September 2022 to be indicative of a continuing course of stalking conduct."). The trial court also determined that because "Burgess was the victim in this matter, … approaching [her] teenage daughter after September 2022 [did] not indicate a continuing course of conduct as it relate[d] to Burgess." Trial Court Opinion, 3/21/2025, at *8. As for harassment, the trial court similarly determined that, within the limitations period, Parkinson had legitimate purposes for his communications with Burgess and, therefore, these actions did not establish *prima facie* evidence

of harassment. **See** Trial Court Opinion, 7/2/2025, at *2 ("It is not unreasonable that [Parkinson] used [a] group chat to communicate with Burgess and her husband, who is [Parkinson's] best friend. [Moreover, none of the] messages sent after October 29, 2022 were sent with an intent to harass or without the intent to communicate legitimately [where Parkinson] sent [] message[s] that attempted to mend the broken relationship between the parties."). According to the trial court, in the absence of conduct constituting valid individual acts of stalking or harassment within the limitations period, Parkinson's conduct before October 29, 2022 was irrelevant for purposes of assessing whether the Commonwealth introduced *prima facie* evidence of the charged offenses. As such, Parkinson was entitled to the dismissal of the charges.

Upon review of the certified record and applicable law, however, we do not agree with the trial court's assessment. Because the trial court narrowly read the criminal statutes at issue, failed to adhere to the legal standards pertaining to *prima facie* evidence at preliminary hearings, and ultimately usurped the function of a factfinder at trial, we are constrained to vacate the order dismissing the charges against Parkinson and remand for trial.

The Commonwealth bore the burden of presenting *prima facie* evidence establishing that the charged crimes had been committed and that the accused was probably the one who committed them. Looking at the evidence, in the light most favorable to the Commonwealth we conclude that the Commonwealth adduced *prima facie* evidence of stalking and harassment. If

the testimony offered by Burgess at the preliminary hearing is accepted as true (as required), it would be reasonable to infer that Parkinson continued to contact Burgess and her family members after Burgess' husband told him not to do so.[8]  Bearing this in mind, it is then reasonable to infer that (for purposes of the stalking charge) the Commonwealth presented *prima facie* evidence that, between 2022 and 2024, Parkinson engaged in a course of conduct with the intent to cause substantial emotional distress in Burgess.  For similar reasons, it is also reasonable to infer that the Commonwealth adduced *prima facie* evidence of harassment by showing that Parkinson engaged in a continuing course of conduct or relayed repeated communications to Burgess which lacked a legitimate purpose.

The trial court thus erred by determining, as a matter of law, that the evidence presented at the preliminary hearing showed that Parkinson had legitimate reasons for his communications and that he did not act with the intent to cause substantial emotional distress.   At the preliminary hearing stage, the weight and credibility of the evidence are not factors to be considered and the judge is not authorized to determine the guilt or innocence of an accused.  **See Perez**.  At this stage of the proceedings, the trial court's sole function was to determine whether probable cause existed to require Parkinson to stand trial on the charges as contained in the complaint.  Instead,

---

[8]   The evidence showed that Parkinson acknowledged that Burgess did not want him to contact her when he sent separate messages saying that:  (1) he missed her and, (2) that enough time had passed for them to speak again and to mend their relationship.

the trial court assessed Parkinson's subjective intent, determined that his communications were legitimate and not intended to cause harm, and, thus, usurped the fact-finding functions of a trial. Here, the reasonable inferences established a *prima facie* case of Parkinson's criminal culpability to bind the three criminal charges over for court. Because the trial court looked at the substance of Parkinson's text and email messages, as well as the contact with Burgess and her daughter, to conclude that Parkinson's interactions were legitimate in the context of the parties' 10-year history, it erred as a matter of law. As such, we are constrained to vacate the trial court's order and remand this case for trial.[9]

---

[9] "[A]t the trial, of course, the Commonwealth's burden is to establish guilt beyond a reasonable doubt." **Perez**, 249 A.3d at 1102–1103. Finally, we note that the Commonwealth alternatively argues that even if "conduct prior to October 2022 cannot be used … due to statute of limitations preclusion, said evidence may still be viewed in the context of [Pa.R.E.] 404(b) character evidence." Commonwealth's Brief at 17. "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[, but] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404 (b)(1)-(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice [and] the prosecutor must **provide reasonable written notice in advance of trial** so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor **intends to introduce at trial**." Pa.R.E. 404(b)(2)-(3) (emphasis added). Rule 404(b) pertains to evidence presented at trial, not at a preliminary hearing. Here, we conclude that the Commonwealth met its burden based solely on our consideration of Parkinson's conduct within the limitations period, *i.e.* October 29, 2022 through October 29, 2024. Given the evidence introduced at the preliminary

*(Footnote Continued Next Page)*

Order vacated.  Case remanded for additional proceedings.  Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/28/2026</u>

---

hearing, it was unnecessary for us to consider, at this stage in the proceedings, the role or impact of Parkinson's conduct before October 29, 2022.  The trial court and the parties are free to consider that evidence in future proceedings on a more developed record.  At trial, however, if the Commonwealth seeks to introduce such conduct into evidence, it must comply with the mandates of Rule 404(b).